UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STAR REEFERS POOL INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 1:11-cv-10136 |
| | ) | |
| - against - | ) | |
| | ) | |
| A Cargo of NINETY-SIX (96) REEFER | ) | |
| CONTAINERS, their equipment, appurtenances, | ) | |
| etc., *in rem*, and KALISTAD LIMITED, JFC | ) | |
| GROUP CO. LTD., WHILM MANAGEMENT | ) | |
| LIMITED and BONANZA FRUIT CO. SA. | ) | |
| CORPBONANZA, *in personam*, | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WHILM MANAGEMENT LIMITED'S EMERGENT MOTION TO VACATE MARITIME
ATTACHMENT AND ARREST AND TO DISMISS ACTION**

**PARTRIDGE SNOW & HAHN LLP**
180 South Main Street
Providence, Rhode Island 02903
Tel: (401) 861-8200
Fax: (401) 861-8210
Email: spb@psh.com

Attorneys for Defendant

WHILM MANAGEMENT LIMITED

Chalos & Co ref: 2104.008

# INTRODUCTION

**COMES NOW**, Defendant, WHILM MANAGEMENT LIMITED (hereinafter "WHILM"), making a restricted appearance in these proceedings pursuant to FED. R. CIV. P. SUPP. R. E(8) (*see* D.E. #10), by and through undersigned counsel, who respectfully submits this Memorandum of Law, together with the accompanying Declarations of William Dominic Heymanson Buckwell (hereinafter "Buckwell Dec."), Anthony Robert Swinnerton (hereinafter "Swinnerton Dec."), and George M. Chalos, Esq. (hereinafter "Chalos Dec.") (and the attachments thereto), in support of this Emergent Motion to Vacate the January 26, 2011 *ex parte* Order authorizing the issuance of the process of Maritime Attachment and Garnishment ("PMAG") and Warrant of Arrest of WHILM'S purported property, namely ninety-six (96) reefer containers (hereinafter "the containers") currently located at Maritime Terminal, Inc. in New Bedford, Massachusetts. WHILM respectfully submits that the *ex parte* Order of Attachment and Warrant of Arrest were knowingly improperly obtained by Plaintiff, STAR REEFERS POOL INC. (hereinafter "STAR REEFERS"), and should never have been issued in the first instance. Plaintiff neither has a valid maritime claim against Defendant WHILM nor a maritime lien against the containers.

Defendant WHILM respectfully submits that Plaintiff has impermissibly and knowingly attached and arrested property rightfully owned by GESeaCo Services Ltd., a non-party to this action and properly leased to WHILM; neither of whom have any connection to the charter party dispute referenced in Plaintiff's Complaint (*see* D.E. #1). Moreover, the containers have been wrongfully withheld from WHILM since <u>at least</u> November 2010, when WHILM demanded return of the containers (in Agadir, Morocco). Rather than return the containers to their rightful owner, Plaintiff instead wrongfully sought to avail themselves of an impermissible and

unjustifiable "self-help" remedy by refusing to discharge the containers to WHILM and instead "kidnapped" and held the containers hostage; transported them around the world (for their own benefit); and discharged them in a completely foreign and unfamiliar place (*i.e.* - New Bedford, Massachusetts), where they have been under *de facto* seizure since November.[1]  Incredibly, Plaintiff now demands freight payment from WHILM for this unknown and unwanted journey around the globe.

For the reasons more fully discussed herein, Defendant WHILM respectfully submits that the Rule B attachment order and Rule C arrest warrant of January 26, 2011 must be vacated; the containers released to WHILM, their rightful lessee; the action dismissed as against WHILM; and that Defendant WHILM should be awarded the costs and expenses it has been forced to incur in bringing this motion to challenge this unlawful arrest and attachment. Defendant WHILM makes this motion pursuant to Rules B, C, and E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter "the Supplemental Admiralty Rules") and FED. R. CIV. P. 12(b)(6).  In the alternative, WHILM respectfully submits that Plaintiff's claim is grossly overstated and that Plaintiff must be ordered to post countersecurity under Supplemental Admiralty Rule E(7) as a condition to maintaining the attachment/arrest.

## STATEMENT OF THE FACTS

For the sake of brevity, the relevant facts pertaining to the instant motion are set forth in the accompanying Buckwell, Swinnerton, and Chalos Declarations.  The facts stated in these Declarations are incorporated by reference.

---

[1] At all times material hereto, the New Bedford Terminal was acting at the request of Plaintiff STAR REEFERS. *See* Chalos Dec. at ¶ 13 and accompanying Exhibit "E".

# ARGUMENT

# POINT I

## THE BURDEN IS ON PLAINTIFF TO SHOW WHY THE ARREST AND ATTACHMENT SHOULD NOT BE VACATED

To obtain a maritime attachment, a plaintiff must comply with Supplemental Admiralty Rule B ("Rule B"), which states in relevant part:

> *If a defendant is not found within the district, . . . a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process . . . The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.*

FED. R. CIV. P. SUPP. R. B(1)(a)-(b).

Rule C of the Supplemental Admiralty Rules is the procedural mechanism used to arrest property that is subject to a maritime lien or other U.S. statute that creates an *in rem* cause of action, providing:

> *An action in rem may be brought:*
>
> *(a) to enforce any maritime lien;*
>
> *(b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.*

FED. R. CIV. P. SUPP. R. C(1)(a)-(b).

Rule E(4)(f) allows any person with an interest in property that has been attached or arrested an opportunity to appear before a district court to contest the attachment. Rule E(4)(f) states, in relevant part:

> *Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.*

FED. R. CIV. P. SUPP. R. E(4)(f).

"Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 n.5 (2d Cir. 2006). Similarly, "[u]nder Rule (E)(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims, [the arresting party] has the burden of proof to show cause why the arrest . . . should not be vacated." *Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles and their Contents*, 179 F.R.D. 41, 44 (D. Mass. 1998) (*citing* FED. R. CIV. P. SUPP. R. E(4)(f)).

Although there is limited First Circuit case law addressing the requirements of Rule B and Rule C in a maritime attachment and/or arrest case, the Second Circuit Court of Appeals has ruled that in order to sustain an attachment, a plaintiff <u>must</u> show at the Rule E(4) hearing that it has fulfilled the "filing and service requirements of Rules B and E" <u>and</u> that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli*, 460 F.3d at 445 (footnote omitted).[2] If a

---

[2] While WHILM recognizes that cases from the Second Circuit are not binding authority upon this Court, WHILM nonetheless submits that decisions from the Second Circuit and the Southern District of New York are uniquely persuasive in view of the sheer volume of maritime attachment and arrest cases heard by those courts. As the

plaintiff fails to demonstrate that it has met *any* of the requirements of Rules B and E, the district court must vacate the attachment. *Aqua Stoli,* 460 F.3d at 445. Similarly:

> although arrest of maritime property is a remedy available within the maritime jurisdiction, it requires an underlying maritime cause of action supporting a maritime lien in the property arrested . . . In order to avail itself of the device of maritime arrest, a plaintiff has the burden of showing that it is entitled to a maritime lien; if it cannot do so, the arrest fails and must be dissolved. See Supplemental Rule E(4)(f) (stating that the plaintiff "shall be required to show why the arrest or attachment should not be vacated.")

*Bay Casino, LLC v. M/V ROYAL EMPRESS*, 20 F. Supp. 2d 440, 448 (E.D.N.Y. 1998).

In the instant matter, Plaintiff STAR REEFERS has wrongfully attached property rightfully owned by a non-party to this matter and leased by WHILM. Plaintiff has not, and cannot, assert a *prima facie* case against WHILM. Similarly, Plaintiff has not, and cannot, assert any claim or lien against the containers which would entitle Plaintiff to arrest the containers pursuant to Rule C. Accordingly, for the reasons more fully set forth herein, WHILM respectfully submits that the Order of Attachment and Warrant of Arrest must be vacated; the containers immediately released to WHILM; STAR REEFERS' action dismissed; and WHILM awarded its costs and fees incurred in responding to this frivolous matter.

## POINT II

### PLAINTIFF'S ATTACHMENT AND ARREST OF THE <u>CONTAINERS MUST BE VACATED</u>

Pursuant to this Court's Orders of January 26, 2011 (D.E. #6 and D.E. #8) (and, in fact, since long before these Orders were obtained), Plaintiff has wrongfully interfered with the ninety-six (96) reefer containers currently being held by non-party Maritime International, Inc. at

---

Second Circuit Court of Appeals noted in *The Shipping Corporation of India v. Jaldhi Overseas Pte. Ltd.*, "from October 1, 2008 to January 31, 2009 alone, maritime plaintiffs filed 962 lawsuits seeking to attach a total of $1.35 billion. These lawsuits constituted 33% of all lawsuits filed in the Southern District." 585 F.3d 58, 62 (2d Cir. 2009). *See also Flame S.A. v. M/V LYNX*, E.D. Tex. Docket No. 10 Civ. 278 (RC) (E.D. Tex. June 22, 2010) ("The Southern District of New York is home to one of the largest ports in the world. Its courts are well versed in admiralty matters, so these decisions are persuasive.")

Maritime Terminal, Inc., 276 Macarthur Drive, New Bedford, Massachusetts 02740. Even prior to this Court's recent Orders, a de facto arrest/attachment was in place, as STAR REEFERS was, ostensibly, holding the containers for ransom and instructed Maritime International, Inc. to refuse to release the containers to their rightful owner and/or operator (*i.e.* – WHILM) without STAR REEFERS's instructions. In fact, Plaintiff's counsel has readily admitted: "The terminal is acting at our client's [STAR REEFERS'] request." *See* e-mail from John Keogh dated January 27, 2011 at 1:17 p.m., a copy of which is attached as Exhibit E to the Chalos Declaration. As Plaintiff's attachment and arrest of the containers is both factually and legally improper, WHILM respectfully submits that this Honorable Court should issue an Order vacating the January 26, 2011 Order of Attachment and Warrant of Arrest; order the immediate release of the containers to WHILM; and award WHILM its costs and fees.

**A. Plaintiff has not asserted a *prima facie* maritime claim against WHILM.**

Plaintiff's Verified Complaint is best described as confused. Plaintiff's Complaint alleges damages arising from Defendant KALISTAD LIMITED's purported breach of three (3) charter parties it had entered into with Plaintiff. Plaintiff has not presented any allegations of an alter-ego relationship between KALISTAD LIMITED and WHILM, as it is understood that such frivolous allegations would be entirely without evidentiary support and clearly would be subject to sanctions under FED. R. CIV. P. 11(c).

There can be no dispute that Defendant WHILM was not a party to any of the charter party agreement for the three (3) charters between Plaintiff and Defendant KALISTAD LIMITED. *See* Plaintiff's Complaint (D.E. #1) at ¶¶ 8-9 and Swinnerton Dec. at ¶ 19. In addition, Plaintiff has not lodged any claims against WHILM in the pending London arbitration proceeding commenced against KALISTAD LIMITED. *See* Swinnerton Dec. at ¶ 19. In short,

Plaintiff has failed to meet the most basic requirement of Rule B – an *in personam* maritime claim against the defendant. Said another way, Plaintiff has no claim against WHILM which would entitle it to a Rule B attachment of the containers being leased and operated by WHILM.[3]

### B. Plaintiff has no lien against the containers themselves which would give rise to a valid *in rem* claim under Rule C.

It is axiomatic that Rule C requires a plaintiff seeking a maritime arrest to establish that it is entitled to a maritime lien. *See* FED. R. CIV. P. SUPP. R. C(1)(a); *Bay Casino, LLC v. M/V ROYAL EMPRESS*, 20 F. Supp. 2d 440, 448 (E.D.N.Y. 1998). Plaintiff's Verified Complaint alleges that Plaintiff has a lien on the reefer containers under Clause 17 of its charters with KALISTAD LIMITED[4], which provides:

> The Owners [*i.e.* – STAR REEFERS] shall have a lien upon all cargoes and sub-freights belonging to the Time-Charterers [KALISTAD LIMITED] and any Bill of Lading freight for all claims under this Charter, and the Charterers shall have a lien on the Vessel for all moneys paid in advance and not earned.

Based on this provision of the charters, Plaintiff claims that it has a maritime lien against the ninety-six (96) containers currently being held in New Bedford, Massachusetts. However, this claim fails because the containers <u>do not belong to KALISTAD LIMITED</u>.

In *Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles and their Contents*, 179 F.R.D. 41 (D. Mass. 1998), a case with analogous facts to those presented in this matter, Judge Gertner considered a motion to vacate a Rule C arrest of "thirty-four automobiles, arrested by order of this Court, without their owners' knowledge, as security in a dispute in which the owners are not involved." *Id.* at * 43. For Your Honor's ready reference, a copy of the Court's decision in

---

[3] Even assuming, *arguendo*, that Plaintiff had properly asserted a *prima facie* claim against WHILM (which it did not), Plaintiff still has failed to satisfy the requirements of Rule B because Plaintiff has not identified property "of the Defendant's" within the District of Massachusetts. As set forth more fully in Point II(B), *infra*, the reefer containers at issue in this matter are owned by a non-party to this action.

[4] Plaintiff has not included a copy of the charterparty with its Verified Complaint; however, for Your Honor's ready reference, a copy is attached to the Swinnerton Declaration at ARS1 pages 1-26.

Chalos & Co ref: 2104.008        7

*Prozina* is attached as Exhibit "F" to the Chalos Declaration. In *Prozina*, a dispute arose between the plaintiff, Prozina, and the *in personam* defendant, Elizabeth Newark Shipping ("ENS"), concerning amounts alleged by Prozina to be due to it from ENS under the parties' time charter agreement. *Id.* Prozina asserted a maritime lien on the cars based upon general principles of maritime law and a clause in the parties' charter party, which read ". . . the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter . . . ." *Id.* at * 44. Prozina further argued that general principles of maritime law allow a charterer to assert a lien on cargo for amounts due under a charter party, regardless of whether the owner of the cargo is a party to that contract. *Id.* The owners of two (2) of the vehicles filed claims to their vehicles with the Court, and moved to vacate the arrest, arguing that Prozina did not have a valid maritime lien. *Id.* at * 43.

Judge Gertner rejected Prozina's claims in their entirety and granted the motion to vacate the arrest. The Court first distinguished the sole case Prozina cited in support of its claim to an automatic lien on cargo owned by third parties, noting that the authority cited by Prozina "did not involve a lien on cargo owned by third parties who were neither parties to the charter contract nor in any way responsible for its breach." *Id.* at * 45. In support of her conclusion, Judge Gertner relied on a Fifth Circuit case which held that "where the charterer had not paid the ship owner the charter hire, the shipowner could not assert a lien on cargo not owned by the charterer." *Id.* (*citing Goodpasture, Inc. v. M/V POLLUX*, 602 F.2d 84, 86-87 (5th Cir. 1979)). In fact, Judge Gertner noted that in *M/V POLLUX*, the Court found that the owner of the ship was liable in maritime tort for "holding the [cargo] hostage" for payment of the charter hire. *Id.* The Judge similarly rejected Prozina's claim that it had a right to hold the cars to protect and enforce its lien on subfreights, noting that "for a lien on subfreights to be enforceable against a

third party to the charter contract, the third party must have actual notice – normally, but not exclusively, through issuance of bills of lading – for the lien to be 'perfected.'" *Id.* at * 46. Judge Gertner found that Prozina had failed to perfect its lien on the subfreights by timely notice to the owners of the cars and, accordingly, that it had "offered neither legal nor factual support sufficient to meet its burden of showing why the arrest of the thirty-four vehicles should not be vacated." *Id.* at * 46, 47.

In this instant matter, as the Declaration of William Dominic Heymanson Buckwell sets forth, the ownership interest in the ninety-six (96) containers at issue in this matter lies <u>exclusively</u> with non-party GESeaCo Srl (hereinafter "Srl"), the parent company of GESeaCo Services Ltd. (hereinafter "GESC"). Buckwell Dec. at ¶¶ 4-5, 7. GESC leases all of its equipment from Srl, the owner of the ninety-six (96) containers, to lease out to end user customers such as WHILM. Buckwell Dec. at ¶ 7. Pursuant to a lease agreement between GESC and defendant WHILM dated October 29, 2007, GESC agreed to lease the ninety-six (96) containers to WHILM. Buckwell Dec. at ¶ 8. For Your Honor's ready reference, a copy of the lease agreement between GESC and WHILM is attached as Exhibit "2" to the Buckwell Declaration. The lease agreement expressly provides at paragraph 6(ii) that "title to the Containers shall remain with GESC . . . and the Lessee [*i.e.* – WHILM] shall have quiet possession if the provisions of the Lease are observed." Buckwell Dec. at ¶ 9. There are no other owners of the ninety-six (96) containers attached and arrested in these proceedings. Buckwell Dec. at ¶ 10. Moreover, there is no contract by and between GESC and Plaintiff STAR REEFERS in regard to this matter. Buckwell Dec. at ¶ 12.

In commencing the instant lawsuit, Plaintiff has wrongfully asserted a lien on the containers based on a charter party dispute which apparently exists between Plaintiff and

Defendant KALISTAD LIMITED. Plaintiff's arguments in support of its Rule C arrest efforts are without merit. KALISTAD LIMITED has no ownership interest in the containers, and Plaintiff cannot properly assert a lien on containers owned by a third party who was "neither [a] part[y] to the charter contract nor in any way responsible for its breach." *Prozina*, 179 F.R.D. at 45.[5] Simply put, there is no basis for the prior and continued arrest of the containers. GESC is the rightful owner of the ninety-six (96) containers which are leased to WHILM. As such, the containers must be immediately released.

## POINT III

## **THIS ACTION MUST BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6)**

A Rule 12(b)(6) motion to dismiss seeks dismissal for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). Dismissal is warranted if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). "To overcome a motion to dismiss, plaintiff's complaint may not rely on 'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 210 U.S. App. LEXIS 24644 at * 11 (1st Cir. 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

---

[5] There has never been a claim raised for subfreights and no notice has been given to GESC to perfect any lien right that Plaintiff may have in same. It is understood no such claim exists.

As discussed in Point II, *supra*, Plaintiff has failed to articulate <u>any</u> justifiable basis to claim against Defendant WHILM. Although Plaintiff has self-servingly failed to provide the Court copies of its three (3) charters, Plaintiff's own complaint acknowledges that its three (3) charter parties were with defendant KALISTAD LIMITED, <u>not</u> with Defendant WHILM. *See* Verified Complaint at ¶¶ 8-9. Notwithstanding, Plaintiff makes the conclusory claim that WHILM is somehow responsible for debts claimed to be owed to Plaintiff by KALISTAD LIMITED. Tellingly, Plaintiff has not pursued (as it cannot) any claim against WHILM under the charter parties in London Arbitration. *See* Swinnerton Declaration at ¶ 19. The arbitration clause is clear, mandatory, and binding on any and all such claims. *See* Swinnerton Declaration at ¶ 6. There is simply no basis for Plaintiff to assert any claim against WHILM in connection with its disputes with KALISTAD LIMITED and, accordingly, Plaintiff's Complaint must be dismissed as to WHILM.[6]

**POINT IV**

**DEFENDANT SHOULD BE ENTITLED TO AN
AWARD OF COSTS AND FEES**

Defendant respectfully requests an award for the costs and fees it had to incur as a result of Plaintiff's unjustifiable refusal to release the containers after repeatedly being advised that WHILM – an innocent third party with no connection to Plaintiff's disputes with KALISTAD LIMITED – was the rightful lessee of the containers at issue.

---

[6] Moreover, by Plaintiff's own admission, Plaintiff's substantive claims for breach of charter are subject to the charter parties between STAR REEFERS and Defendant KALISTAD LIMITED and, specifically, the parties' forum selection clause contained therein. *See* Plaintiff's Complaint (D.E. #1) at ¶ 39 ("The Charters provide that all disputes between Star Reefers and Kalistad are to be resolved by arbitration in London in accordance with English law."). Accordingly, in the absence of any attachable property of KALISTAD LIMITED within this District, there is no basis for this Court's continued exercise of jurisdiction over this action and the case must be dismissed in its entirety.

Under Supplemental Admiralty Rule E, all pleadings seeking maritime attachment orders must "state the circumstances from which the claim arises with such particularity that the defendant. . . will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *See P.R. Ports Auth. v. BARGE KATY-B*, 427 F.3d 93, 105 (1st Cir. 2005) (quoting FED. R. CIV. P. SUPP. R. E(2)(a). "Ordinary notice pleading does not satisfy the stringencies of this these rules." *Id.*

In addressing Rule E's heightened pleading standard, the *BARGE KATY-B* Court noted:

> This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in rem admiralty proceedings.

*427 F.3d at 105* (citing *United States v. One Parcel of Real Property*, 964 F.2d 1244, 1248 (1st Cir. 1992).

Despite this heightened pleading requirement, Plaintiff has failed to articulate <u>any</u> claim against WHILM or against the containers that it seeks to attach and/or arrest herein. In *Centauri Shipping Ltd. v. Western Bulk Carriers AS*, 528 F. Supp. 2d 197 (S.D.N.Y. 2007), the court remarked with reference to Rule B's pleading standards:

> Rule B is a powerful and in some ways unprecedented tool available to plaintiffs in maritime actions. There are good reasons for it. But[] it is premised on the assurance that plaintiffs and their counsel will act with care and candor in *ex parte* proceedings with the court.

*Id.* at 203.

Prior to the commencement of this proceeding (and again after filing), counsel for WHILM repeatedly advised Plaintiff's New York counsel that the containers were owned by non-party GESC. *See* Chalos Dec. at ¶ 14. Similarly, Plaintiff's New York counsel was repeatedly advised that GESeaCo Srl owned the containers and that WHILM was the rightful

lessee of the containers. *See* Chalos Dec. at ¶ 14. Plaintiff was requested to articulate the basis for wrongfully withholding property owned and leased by parties with no demonstrable connection to Plaintiff's charter party dispute with KALISTAD LIMITED. *See* Chalos Dec. at ¶ 14. Plaintiff refused to do so and instead sought the court's intervention to continue to try to justify its prior wrongful actions under the color of U.S. law in holding the containers hostage as Plaintiff's ship sailed around the world. Accordingly, it is respectfully requested that this Honorable Court grant the Defendant an Award of the costs and expenses it has been forced to incur in bringing this motion to challenge the continued wrongful attachment. *See Stolthaven Houston, Inc. v. RACHEL B*, 2008 U.S. Dist. LEXIS 55723, at * 19 (S.D.N.Y. 2008) (awarding Defendant attorneys' fees for refusing to release attached funds after being advised by Defendant's counsel that the attachment was improper).

## POINT V

### IN THE ALTERNATIVE, PLAINTIFF'S CLAIM IS GROSSLY OVERSTATED

In the alternative, to the extent that this Honorable Court is inclined to rule in favor of Plaintiff (which we respectfully submit it should not), WHILM respectfully submits that Plaintiff's claim is grossly overstated. As set forth in greater detail above, WHILM has repeatedly demanded that Plaintiff release the containers to WHILM, a party with no connection to Plaintiff's dispute with KALISTAD LIMITED and the rightful lessee of the containers. Notwithstanding, Plaintiff's complaint alleges huge damages claimed against another party and/or by its own doing, including charges incurred from Maritime Terminal, Inc. for storage and care of the containers and other "handling fees." WHILM respectfully submits that Plaintiff's claim must be limited to, at most, the unpaid handling costs alleged to be due and owing to Plaintiff (to the extent that any such costs and expenses could properly be due and

owing). Plaintiff may not include the alleged charges it purposefully and self-servingly incurred in perpetuating a journey around the world to effect a wrongful seizure of the containers without due process of law.

## POINT VI

### SHOULD THIS HONORABLE COURT NOT VACATE THE ARREST AND ATTACHMENT, WHILM REQUESTS THAT PLAINTIFF BE COMPELLED TO POST COUNTERSECURITY

Supplemental Rule E(7) allows a Rule B defendant to obtain security for counterclaims where the plaintiff has already obtained security for its claim. Specifically, Rule E(7) provides:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given <u>must</u> give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise.

FED. R. CIV. P. SUPP. R. E(7) (emphasis added).

In interpreting this language, the Second Circuit Court of Appeals has noted that "the trial court possesses broad discretion in deciding whether to order countersecurity under such conditions [as provided in Rule E(7)(a)]." *Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.,* 56 F.3d 394, 399 (2d Cir. 1995); *Afram Lines International Inc. v. M/V Capetan Yiannis,* 905 F.2d 347, 349 (11th Cir. 1990); *Voyager Shipholding Corp. v. Hanjin Shipping Co.*, 2008 U.S. Dist. LEXIS 11045, at *3 (S.D.N.Y. 2008). In deciding whether countersecurity should be ordered, then-District Court Judge Lynch (now a Circuit Judge with the Second Circuit Court of Appeals) observed that:

> the core purpose of the countersecurity rule is to place the parties on an even footing; if one party is deprived of the use of its

> property during the litigation but the adverse party is not, despite
> the pendency of reciprocal claims, the party with the security may
> have unfair leverage in the action.

*Finecom Shipping Ltd. v. Multi Trade Enterprises AG,* 2005 U.S. Dist. LEXIS 25761, at * 2 (S.D.N.Y. 2005).

Although the First Circuit Court of Appeals has not spoken on this issue, numerous courts within the Second Circuit and the Southern District of New York[7] have ruled on a district court's obligations in reviewing a claim for countersecurity under Rule E(7). As one Southern District judge noted, "courts need to be cautious in addressing the merits of such disputes at the very preliminary stage of litigation at which security and countersecurity issues typically arise." *Voyager Shipholding Corp. v. Hanjin Shipping Co.*, 2008 U.S. Dist. LEXIS 11045, at *6 (S.D.N.Y. 2008). For the court reviewing the request for countersecurity, inquiry into the merits of the counterclaim is "severely limited." *Id.*; *Front Carriers, Ltd. v. Transfield ER Cape Ltd.*, 2007 U.S. Dist. LEXIS 81577, at * 2 (S.D.N.Y. 2007); *Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte Ltd.*, 531 F. Supp. 2d 586, 598 (S.D.N.Y. 2008) (noting that the court considering a countersecurity request "should not conduct extensive merits analysis, but rather, screen only for 'totally frivolous claims.'")

Supplemental Rule E(7) further requires that the counterclaim arise "from the same transaction or occurrence that is the subject of the original action." In determining the relatedness of a Supplemental Rule E counterclaim, the term "transaction":

> "has a 'flexible meaning' that 'may comprehend a series of many
> occurrences, depending not so much on the immediateness of their
> connection as upon their logical relationship.' . . . [T]he Second
> Circuit has taken a 'broad view' of the rule, based on whether there
> is a 'logical relationship between the claim and the counterclaim'

---

[7] *See supra*, n. 2.

> such that 'considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'"

*Voyager Shipholding*, 2008 U.S. Dist. LEXIS 11123, at *5 (citations omitted). It is well established in both the Second and Fifth Circuits that claims and counterclaims arising out of a vessel charter are considered "arising out of the same transaction" under Rule E(7). *Verton Navigation, Inc. v. Caribica Shipping Ltd.*, 1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. 1991); *Transportes Caribe, S.A. v. M/V Feder Trader*, 860 F.2d 637 (5th Cir. 1988).

As set forth in the Declaration of Solicitor Anthony Robert Swinnerton, counterclaims have been lodged in the ongoing London Arbitration against STAR REEFERS in the amount of USD 11,888,611.92, all arising from the same charter party claims which form the basis of Plaintiff's wrongful interference with WHILM's containers. *See* Swinnerton Dec. at ¶ 7. Specifically, KALISTAD LIMITED has alleged counterclaims for damages of USD 7,207,845.42; trading/profit losses of USD 2,604,558.50; and other losses of USD 2,076,208 for each of the vessels. *See* Swinnerton Dec. at ¶ 7. Both Plaintiff's original claim and the counterclaims are being resolved within the same arbitration proceeding pursuant to the forum selection clause contained in the parties' charters. *See* Swinnerton Dec. at ¶¶ 6-7.

It is axiomatic that claims and counterclaims between vessel owners and charterers arising out of a vessel charter are considered "arising out of the same transaction" in satisfaction of Supplemental Admiralty Rule E(7). As Plaintiff has acknowledged, the charter party is subject to London arbitration and factual disputes between the parties in this matter are to be litigated there. Accordingly, the counterclaims presented cannot be considered frivolous.

Moreover, Plaintiff should be required to promptly post countersecurity as a condition to maintaining the arrest and attachment. In *Pancoast Trading S.A. v. Eurograni S.r.L.*, 2008 U.S. Dist. LEXIS 4224 (S.D.N.Y. 2008), the Court noted that Rule E(7)(a) "does not limit the

countersecurity to the amount of the security provided by the defendant to secure the plaintiff's claim." *Id.* at *2-3. This principle was again followed in *Voyager Shipholding Corp. v. Hanjin Shipping Co.*, 539 F. Supp. 2d 688 (S.D.N.Y. 2008), when the Court ruled that "[s]uch an absolute rule would be a travesty, not an application of the rule that awards of countersecurity aim to place the parties on an 'even footing.'" *Id.* at * 10. *See also Navinord S.A. v. Eastbourne Maritime Limited*, S.D.N.Y. Docket No. 09 CV 3761 (LAK) (S.D.N.Y. July 6, 2009) (requiring the plaintiff to provide full security for the defendant's counterclaims, totaling USD 947,247.18, when plaintiff was fully secured in its own claim for USD 129,682.51); *C Transport Panamax Ltd. v. Pacific Ocean Resources Limited*, S.D.N.Y. Docket No. 06 Civ. 11413 (RJH) (S.D.N.Y. Feb. 21, 2008) (requiring the plaintiff to provide full security for the defendant's counterclaims, totaling USD 1,595,999.00, when plaintiff was fully secured in its own claim of USD 101,240).

Judge Hazel recognized nearly eighty (80) years ago that "courts of admiralty act as courts of equity and according to what is just and right." *The LAKE PACHUTA,* 56 F.2d 627, 629 (S.D.N.Y 1930), *aff'd* 60 F.2d 876 (2d Cir. 1932). Here, to the extent that the Court does not vacate the wrongful attachment and arrest in its entirety, it is "just and right" under the circumstances to compel Plaintiff to post countersecurity for the full amount of the counterclaims being alleged in the London arbitration. Accordingly, WHILM respectfully requests that this Honorable Court issue an Order directing Plaintiff to furnish countersecurity in the amount of USD 11,888,611.92.

## **CONCLUSION**

WHEREFORE, based upon the foregoing and the accompanying Declarations, it is respectfully submitted that the wrongful attachment and arrest of WHILM's containers must be vacated; the containers released to Defendant WHILM; the action dismissed as against WHILM;

and WHILM be awarded its costs and fees incurred in bringing this motion. In the alternative, Defendant WHILM requests that this Honorable Court order Plaintiff to post countersecurity in the sum of USD 11,888,611.92. Defendant WHILM further requests that the Court grant such other and further relief as it deems just and proper, including an award of its legal fees and expenses in bringing this motion.

Dated: Providence, RI
       January 28, 2011

                              Respectfully Submitted,

                              **PARTRIDGE SNOW & HAHN LLP**
                              *Attorneys for Defendant*
                              WHILM MANAGEMENT LIMITED

                    By    /s/ Samuel P. Blatchley_____
                              Samuel P. Blatchley (BBO No. 670232)
                              180 South Main Street
                              Providence, Rhode Island 02903
                              Tel: (401) 861-8200
                              Fax: (401) 861-8210
                              E-mail: spb@psh.com

OF COUNSEL:

George M. Chalos, Esq.
CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Tel:  (516) 714-4300
Fax:  (516) 750-9051
E-mail:  gmc@chaloslaw.com

CERTIFICATE OF SERVICE

I, Samuel P. Blatchley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 28, 2011.

/s/Samuel P. Blatchley